RESEARCH CONSULTING ASSOCI-
ATES, and Albert S. Richardson,
Plaintiffs,

v.

ELECTRIC POWER RESEARCH INSTI-
TUTE, INC. and James Baker,
Secretary of the Treasury, Defendants.

Civ. A. No. 84–1106–Y.

United States District Court,
D. Massachusetts.

Jan. 31, 1986.

Paul R. Gupta, Thomas P. Gorman, Sherin & Lodgen, Boston, Mass., for plaintiffs.

J. William Codinha, Peabody & Brown, Jeffrey Martin, Asst. U.S. Attys., J. William Codinha, Sloane & Walsh, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case presents the question whether the plaintiffs, Research Consulting Associates, Inc. ("Research Consulting") and Albert Richardson, have standing to challenge the tax exempt status of the defendant Electric Power Research Institute (the "Institute"). In this lawsuit Research Consulting seeks, *inter alia*, to enjoin the defendant Secretary of the Treasury (the "Secretary") from granting tax exempt status to the Institute. The Secretary has moved to dismiss the claim against him for lack of standing. For the reasons discussed below the motion is allowed.

### I.

The complaint alleges the following facts, which the Court must assume are true for purposes of this motion to dismiss. Research Consulting is a small business located in Lexington, Massachusetts. Albert Richardson, the owner of Research Consulting, formed the company in 1957 for the purpose of researching and promoting products to be used by electric utility companies. In 1966 Research Consulting developed the "Windamper," which was awarded patents in the United States and Canada. The Windamper is a device that attaches to overhead bulk power transmission lines for the purpose of controlling "galloping" of lines. Galloping is a condition typically caused by a combination of high winds and freezing weather in which electric transmission lines oscillate with sufficient amplitude and force so as to cause the line to fail. The United States' electric utility industry ("the industry") has long recognized the seriousness of the galloping problem, and the need to develop adequate antigalloping devices.

The Institute was organized in 1972, with the purpose "to promote, engage in, conduct, and sponsor research and development with respect to electricity production, transmission, distribution and utilization." (Complaint ¶ 12) In addition to planning and managing research and development, the Institute acts as a trade association for the industry, and performs certain functions with respect to setting standards in the industry. The Institute enjoys tax exempt status under § 501(c)(3) of the Internal Revenue Code. 26 U.S.C. § 501(c)(3).

Sometime prior to 1972, Dr. David G. Havard and other personnel of Ontario Hydro, a Canadian utility company, developed an anti-galloping device named the "Detuner." The Detuner was introduced in the United States in 1977. Since that time the Institute has manifested a considerable interest in the capabilities of the Detuner. In order to collect data on the Detuner's performance the Institute has given approximately 2,500 Detuners to utilities free of charge. The Institute has made no similar distribution of the Windamper.

The nub of Research Consulting's [1] complaint is that in order to profit from sales of the Detuner, the Institute is attempting to elevate the Detuner and diminish the Windamper in the eyes of the industry. The Complaint alleges that the Institute has acquired or is attempting to acquire

---

**1.** Because the interests of Research Consulting and Richardson are indistinguishable in this matter, the Court will refer to both plaintiffs simply as "Research Consulting."

the rights to license the Detuner. It further alleges that the Institute's independent testing of the Detuner is only a guise, and that the systematic exclusion of the Windamper from all testing is designed to establish the Detuner as the only commercially marketable anti-galloping device.

The original complaint in this case was filed in April, 1984, and named only the Institute as a defendant. The complaint claimed rights to relief for antitrust violations (Count I), unfair competition (Count II), trade libel (Count III), tortious interference with economic relations (Count IV), breach of contract (Count V), and unfair and deceptive practices (Count VI). Subsequently, Research Consulting moved to amend the complaint to join the Secretary as a defendant, and seeking to enjoin the Secretary's grant of tax exempt status to the Institute. After full briefing by Research Consulting and the Institute, another judge of this court, to whom this case was originally assigned, allowed the motion to amend. The only additional allegations in the amended complaint are that the Institute has engaged in conduct not substantially related to the purpose of its tax exemption, and that as a result Research Consulting has suffered "serious financial losses."

## II.

Before reaching the merits of the standing issue, it is necessary briefly to respond to Research Consulting's characterization of the Secretary's motion to dismiss as an effort "to place before the Court issues already fully addressed and properly resolved in connection with plaintiffs' motion to amend its (sic) complaint." If by so arguing Research Consulting means to imply that the order permitting amendment constitutes the "law of the case" on standing, it is wrong.

That the Institute cited many of the same cases in opposing the motion to amend that the Secretary cites here does not justify the conclusion that the first judge ruled on the standing issue. An order allowing a motion to amend will not act as law of the case so as to preclude a motion to dismiss by a party not present when the complaint was amended. Basic principles of fairness dictate that a nonparty who is joined involuntarily should be free to seek determination of dispositive issues. *Cf.* Wright, Miller & Cooper, 18 *Federal Practice and Procedure* § 4478 (1981). It is thus not surprising that in allowing the motion to amend the first judge noted in the margin that "standing may be raised by the defendant [Secretary]." Accordingly, the standing question is now properly before the Court.

## III.

The genius of the tripartite system of government established by our constitution is that power is distributed so as to limit each branch to its proper role in a democratic society. Article III of the Constitution establishes that the role of the judiciary properly is limited to the adjudication of actual "cases" and "controversies." *Cf. Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Chief among the doctrines that "cluster about Article III," *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1178 (D.C.Cir.1982), is the requirement that a litigant have "standing" to invoke the power of the federal court. The standing requirement ensures that cases will "be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). "In essence the question of standing is whether the litigant is entitled to have the Court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2205.

The requirements imposed upon a litigant under the rubric of standing derive from two sources; Article III of the Constitution, and judicially self-imposed limits known as "prudential limitations." *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2205; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct.

752, 757, 70 L.Ed.2d 700 (1982). For purposes of deciding this case the Court need only discuss those requirements of standing that derive directly from the Constitution. As interpreted by the Supreme Court, Article III requires that a "plaintiff must allege personal injury fairly traceable to the defendant's alleged conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984).

It is clear that these requirements hardly are susceptible of mechanical application in a given case. This Court is far from alone in noting the inherent imprecision of the Supreme Court's standing doctrine. *See e.g., Allen v. Wright,* 104 S.Ct. at 3325; *Valley Forge v. Americans United,* 454 U.S. at 475, 102 S.Ct. at 760; *Tax Analysts and Advocates v. Blumenthal,* 566 F.2d 130, 139 (D.C.Cir.1977). For example, it has been said that while the injury alleged must be "distinct and palpable," *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), any "identifiable trifle [of harm] is enough." *United States v. SCRAP,* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417 n. 14, 37 L.Ed.2d 254 (1979). Likewise, although the causative link between the alleged injury and the challenged conduct cannot be "speculative" or "too attenuated," *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 44, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976); *Linda R.S. v. Richard D.,* 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973), it is unclear how directly linked the injury must be before it "fairly can be traced" to the challenged action, *Simon v. Eastern Kentucky,* 426 U.S. at 41, 96 S.Ct. at 1926. Recognizing this "flexibility" of current standing doctrine, the Court nonetheless is convinced that a faithful application of established principles compels the conclusion that in this case Research Consulting does not have standing to challenge the Institute's tax exempt status.

The Secretary argues that the cases justify the conclusion that a litigant never has standing to challenge the tax exempt status of a third party. The Court concludes that while one might reasonably expect the Supreme Court to declare such a rule in the future, it is not an accurate statement of existing law. Although the Supreme Court has shown a discernible hostility to suits attacking the tax exempt status of a third party, *see Allen v. Wright,* 104 S.Ct. at 3315; *Simon v. Eastern Kentucky,* 426 U.S. at 26, 96 S.Ct. at 1917, the Court specifically has avoided reaching the question "of whether a third party ever may challenge IRS treatment of another." *Simon v. Eastern Kentucky,* 426 U.S. at 37, 96 S.Ct. at 1923. Moreover, the leading Court of Appeals case dealing with competitor standing to challenge tax exempt status, *American Society of Travel Agents v. Blumenthal,* 566 F.2d 145 (D.C.Cir.1977), denied standing simply because the plaintiffs had not indicated with "sufficient specificity" the causal link between the tax exempt status and their injuries. *Id.* at 148. Implicitly, such a holding left the door open to other more directly injured litigants, even if that door is only "barely ajar." *Wright v. Regan,* 656 F.2d 820, 828 (D.C.Cir.1981), *rev'd* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Hence, this Court recognizes the possibility of standing in these types of cases, and moves on to the question of whether this particular plaintiff has standing to bring this particular claim.

■ The conduct challenged here by Research Consulting is the Secretary's grant of tax exempt status to the Institute.[2]

**2.** Although the amended complaint does not state a basis of jurisdiction for Research Consulting's claim against the Secretary, the Court rules that § 10 of the Administrative Procedures Act, 5 U.S.C. § 702, provides it jurisdiction to hear the claim (Any person "aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review"). A plaintiff who asserts standing under § 10 must demonstrate, in addition to an injury in fact, that the alleged injury is within the zone of interests arguably protected or regulated by the relevant statute. *Data Processing Service v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Because the Court concludes that Research Consulting has not met the core constitu-

Therefore, for this Court to find standing Research Consulting must allege, at a minimum, (1) an injury in fact, (2) fairly traceable to the granting of tax exempt status to the Institute, (3) that is likely to be redressed by enjoining the further grant of tax exempt status. After reviewing the allegations of the complaint in the light most favorable to Research Consulting, the Court concludes that the second and third elements are missing, and that Research Consulting does not have standing to challenge the Secretary's decision.

Viewed as a whole the complaint adequately alleges a threatened injury in fact. The complaint specifically alleges that the "plaintiffs have suffered ... serious financial losses" as a consequence of the Institute's enjoying tax exempt status. While this allegation is somewhat vague, when considered in light of the other allegations of the complaint it satisfies the standard of notice pleading established by the Federal Rules of Civil Procedure. The core of Research Consulting's complaint is that it is suffering a "competitive injury." The cases are clear that in appropriate circumstances competitive injury due to government regulation constitutes injury in fact to fulfill that aspect of the Article III requirements. *See e.g., Data Processing Service v. Camp,* 397 U.S. at 157, 90 S.Ct. at 831; *Investment Company Institute v. Camp,* 401 U.S. 617, 620, 91 S.Ct. 1091, 1093, 28 L.Ed.2d 367 (1971); *Rental Housing Association of Greater Lynn, Inc. v. Hills,* 548 F.2d 388, 390 (1st Cir.1977).

█ It is when Research Consulting attempts to argue the causal connection [3] between this alleged injury and the grant of tax exempt status that its case begins to unravel. Research Consulting argues that it has suffered, or may suffer in the future, financial loss due to the systematic exclusion of the Windamper from the Institute's antigalloping device testing program.

Complaint ¶¶ 36 and 37. What is missing is an allegation or explanation of how this systematic exclusion is fairly traceable to the Institute's tax exempt status. The Court does not see how an independent determination by the Institute as to the relative quality of the competing anti-galloping devices in any way implicates the Secretary's decision to grant the Institute tax exempt status. That Research Consulting miscomprehends the link between the Secretary's actions and its competitive injury is evidenced by the following statement from its brief: "EPRI, by virtue of its tax exempt status, is able to spend hundreds of thousands of tax exempt dollars in testing and promoting the Detuner, while arbitrarily excluding the plaintiffs' Windamper." The ability to spend "hundreds of thousands of tax exempt dollars" is not the cause of Research Consulting's injury. The real source of the alleged injury is that the Institute evidently has chosen the Detuner to be the superior anti-galloping device. That qualitative determination is not "fairly traceable" to the Secretary's granting of tax exempt status to the Institute.

Similarly, it is doubtful that enjoining the grant of tax exempt status likely will redress the injury complained of here. There is nothing in logic or in the complaint which suggests that the Institute will include the Windamper in any testing or promotion if its tax exempt status is revoked. Indeed, it is not even alleged that the Institute is continuing to distribute the free Detuners or that it plans to distribute more anti-galloping devices in the future. Thus, the harm of the allegedly "subsidized" distribution would appear to be complete, and enjoining the Secretary would do nothing to alleviate the injury. In any event, because the Court already has found that Research Consulting's injury is not traceable to the challenged conduct, it is enough to point

---

tional requirements of standing, it need not reach the additional question of whether the alleged injury is within the "zone of interests" of § 501(c)(3).

3. "The 'fairly traceable' and 'redressability' components of the constitutional standing inquiry were initially articulated by [the Supreme] Court as 'two facets of a single causation requirement.'" *Allen v. Wright,* 104 S.Ct. at 3326 n. 19.

out that the complaint fails to allege in what way the requested relief would likely redress the alleged injury.

Research Consulting places great reliance on the case of *Abortion Rights Mobilization, Inc. v. Regan,* 544 F.Supp. 471 (S.D.N.Y.1982) (hereinafter *"Abortion Rights"*). Such reliance is not surprising since that is the only case of which the Court is aware where a litigant was found to have standing to challenge the tax exempt status of a third party. Nonetheless, the reliance is misplaced. *Abortion Rights* involved a constitutional challenge by 29 organizations and individuals to the Secretary's grant of tax exempt status to the Roman Catholic church. The plaintiffs, all of whom were "concerned about the right of a woman to choose to carry a fetus to term or to abort it, and about the constitutionally mandated separation of church and state," *Abortion Rights,* 544 F.Supp. at 473, alleged that the grant of tax exempt status to the church was illegal because the church, in violation of the tax code, was lobbying in partisan political campaigns on behalf of candidates who supported the church's view on abortion. The court found standing on two separate grounds. First, the court found standing under the Establishment clause for ministers of various faiths on the ground that "tacit government endorsement" of the church denigrated their religious communities and beliefs. *Abortion Rights,* 544 F.Supp. at 479. Second, the court found "voter standing," *see Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), for the individual plaintiffs on the theory that they had alleged "government action which [had] improperly biased the political process against the discrete group to which they belong." *Id.* at 481.

Without intending in any way to impugn the correctness of the result reached in *Abortion Rights,* the Court rules that the reasoning of that case is inapplicable to the dispute here. It is well established that the existence of standing "often turns on the nature and source of the claim asserted." *Warth v. Seldin,* 422 U.S. at 500, 95 S.Ct. at 2206. Therefore, the *Abortion Rights*

finding of standing under the Constitution is of the most limited relevance to a claim of standing under the Administrative Procedures Act. The "competitor" standing found in *Abortion Rights* is consistent with the heightened scrutiny federal courts historically have applied to government interference in the marketplace of ideas. It does not counsel the relaxation of well established standing principles in a case where the plaintiff alleges a commercial injury due to government regulation of a third party. In sum, *Abortion Rights* is inapposite because it involved an ideological competitor attempting to vindicate constitutional rights, not a commercial competitor alleging an attenuated connection between government regulation and financial loss.

In accordance with all that has just been said, the motion of the Secretary to dismiss is ALLOWED.