**DALTON FARMS ASSOCIATES and L.M. Dalton Corp., Plaintiffs,**

v.

**James A. BAKER, III, as Secretary of the Treasury, Lawrence P. Gibbs, as Commissioner of Internal Revenue, and People of Beekman, Inc., Defendants.**

No. 88 Civ. 2681 (GLG).

United States District Court, S.D. New York.

Jan. 15, 1989.

Minahan & Peterson, S.C., Milwaukee, Wis. (Michael J. Collard, of counsel), Kirkpatrick & Hunter, White Plains, N.Y. (Thomas G. Hunter, of counsel), for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Edward T. Ferguson, III, Asst. U.S. Atty., of counsel), for defendants James A. Baker, III and Lawrence P. Gibbs.

Berle, Kass & Case, New York City (Michael B. Gerrard, of counsel), for defendant People of Beekman, Inc.

## OPINION

GOETTEL, District Judge.

This is an action by a real estate developer in Dutchess County, New York challenging the government's grant of tax-exempt status to a citizens group that has opposed the developer's plans for a large residential development in the town of Beekman, New York. The defendants have moved to dismiss the action asserting that the plaintiffs lack the requisite standing.

Plaintiff Dalton Farms Associates ("Dalton Farms"), a limited partnership, owns a parcel of land in the town of Beekman, New York on which it intends to develop a 540–unit residential development. Plaintiff L.M. Dalton Corp., a New York corporation, has been retained by Dalton Farms as the proposed developer. Defendant People of Beekman, Inc. ("POB") is a New York Not–For–Profit Corporation formed on February 11, 1987 to preserve the environment of the Town of Beekman and to promote knowledge and discussion of issues concerning the future development of the

town. The plaintiffs allege that POB was formed for the express purpose of stopping the Dalton Farms project and has from its inception been principally dedicated to that goal. The activities of POB include, *inter alia*, distributing literature to town residents and the press, attending Town Board and Planning Board meetings, hiring attorneys and technical experts and instituting litigation in an alleged effort to block the Dalton Farms project.[1]

On April 10, 1987, POB applied to the Internal Revenue Service ("IRS") for recognition as a tax-exempt organization pursuant to section 501(c)(3) of the Internal Revenue Code. 26 U.S.C. §§ 501(c)(3), 508(a)(1). The Internal Revenue Code permits an exemption from federal income taxation for, *inter alia*,

> [c]orporations ... organized and operated exclusively for ... charitable ... purposes ... no part of the net earnings of which inures to the benefit of any private shareholder or individual, [and] no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation ... and which does not participate in, or intervene in ... any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C. § 501(c)(3). POB was granted tax exempt status as a charitable organization on July 31, 1987.

Plaintiffs bring this action against POB and against the Secretary of the Treasury and the Commissioner of Internal Revenue (the "Federal Defendants") seeking a declaratory judgment ordering the IRS to revoke the tax exemption granted People of Beekman, principally on grounds that the group is improperly engaged in political activity.[2] The plaintiffs contend that POB has engaged in activities that constitute an impermissible attempt to influence legisla-

tion by the Town Board and the Planning Board.[3] The defendants move to dismiss for lack of standing.

## I. THE STANDING DOCTRINE

The standing doctrine is grounded in both the case and controversy requirements of Article III and related jurisprudential considerations. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471–76, 102 S.Ct. 752, 757–61, 70 L.Ed.2d 700 (1982). The central concern of the standing requirement is whether the plaintiffs have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Article III standing requirement, therefore, mandates that a "plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). For the purposes of ruling on a motion to dismiss for lack of standing, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975).

Once it has been established that the plaintiffs have suffered actual injury that is fairly traceable to the defendant's conduct and that the court can fashion a remedy to eliminate the wrong, the plaintiffs must still demonstrate to the court that it should not decline to grant standing because of prudential considerations. These prudential concerns are "self-imposed lim-

---

1. Despite the vigorous opposition of POB, the plaintiffs have obtained certain of the approvals they need from the Beekman Town Board and Planning Board.

2. The plaintiffs have not identified a particular federal cause of action in the complaint. The only conceivable basis for a federal claim is section 10 of the Administrative Procedure Act,

5 U.S.C. § 702, which provides that a "person suffering legal wrong because of agency action ... is entitled to judicial review thereof."

3. "Legislation" includes "action" by a local council, such as a town board or planning board. 26 C.F.R. § 1.501(c)(3)–1, at 15 (1987).

its on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed. 2d 556 (1984). In an action brought pursuant to section 10 of the Administrative Procedure Act, the plaintiff must specifically demonstrate "that the alleged injury is within the zone of interests arguably protected or regulated by the relevant statute." *Research Consulting Assoc. v. Electric Power Research Inst., Inc.*, 626 F.Supp. 1310, 1313 n. 2 (D.Mass.1986). *See also Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (cases brought under the Administrative Procedure Act require that the claim be "arguably within the zone of interests to be protected or regulated by the statute ... in question.").

## II. INJURY

The plaintiffs allege two types of actual injury flowing from the IRS grant of tax-exempt status to POB. First, they contend that POB has used its funds, generated wholly or in part by contributions based on its tax-exempt status, to obstruct or delay the Dalton Farms project, to the considerable financial detriment of plaintiffs. Second, they argue that POB has received an unfair political advantage through its tax-exempt status, creating an unequal playing field in the political arena, thereby placing Dalton Farms at a competitive disadvantage in their attempt to obtain approval for their development project.

### A. *Financial Detriment*

■ There can be no doubt that the plaintiffs have alleged a cognizable economic injury. They assert that POB has used its funds, generated wholly or in part by contributions based on its tax-exempt

status, to obstruct or delay the Dalton Farms project, to the considerable financial detriment of plaintiffs. Indeed, the defendants concede that the plaintiffs have alleged injury in fact. The standing inquiry, however, does not end there. The plaintiffs must prove that the injury suffered can be fairly traced to the defendant's illegal conduct.[4] The line of causation between the IRS grant of tax-exempt status to POB and the plaintiffs' alleged financial injury, however, is fraught with gaps.

The "fairly traceable" prong of the standing analysis has been rigidly adhered to in the two cases challenging the tax-exempt status of another that have gone to the Supreme Court. *See Allen v. Wright*, 468 U.S. 737, 758, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984) ("it is entirely speculative ... whether withdrawal of a tax exemption ... would lead the [defendant] to change its policies"); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976) ("purely speculative" whether injury claimed resulted from grant of 501(c)(3) status). In these cases, the Supreme Court has determined that standing cannot be based on injury that "'results from the independent action of some third party not before the court.'" *Allen v. Wright*, 468 U.S. 737, 757, 104 S.Ct. 3315, 3327, 82 L.Ed. 2d 556 (1984) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976)).

The plaintiffs herein allege that the Federal Defendants' grant of 501(c)(3) status to POB caused them to suffer delay and financial hardship in the construction of the Dalton Farms project. To support the causal link between the Federal Defendants' conduct and the harm alleged, the plaintiffs must demonstrate that the denial of tax-exempt status would have resulted in decreased contributions to POB; that decreased contributions would have resulted in decreased spending by POB; and that decreased spending would have rendered

---

**4.** When the relief requested, as here, is the "cessation of the allegedly illegal conduct," the "fairly traceable" causation prong and the "redressa-

bility" prong de facto merge. *Allen v. Wright*, 468 U.S. 737, 759 n. 24, 104 S.Ct. 3315, 3329 n. 24, 82 L.Ed.2d 556 (1984).

POB's opposition to the Dalton Farms project ineffective.

This line of causation is tenuous at best. Such an argument ignores the equally likely possibility that POB would have maintained its initiative even in the absence of a tax exemption. By the allegations of the complaint, it is clear that POB actively opposed the Dalton Farms project for nearly six months prior to obtaining tax-exempt status. Furthermore, plaintiffs allege that the members of POB are landowners with holdings adjacent to or near the site for the Dalton Farms project who claim that the project will increase traffic congestion and noise, endanger their water supply and lower their property values. It seems unlikely that such interested parties would drop their opposition to the Dalton Farms project if their contributions to POB no longer provided them with an income tax deduction.

In sum, the causal link between the conduct of the Federal Defendants and the injury allegedly incurred by the plaintiffs is entirely too speculative to support standing to challenge POB's tax-exempt status. *See Allen v. Wright,* 468 U.S. 737, 758–59, 104 S.Ct. 3315, 3328–29, 82 L.Ed.2d 556 (1984); *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 42–44, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976). This case presents the precise situation rejected by the Supreme Court where the plaintiff's alleged injury is entirely dependent upon action by non-party third persons—in this case the contributors to POB. This court will not engage in the speculation required to find that the plaintiffs' injury is fairly traceable to the Federal Defendants' conduct. Accordingly, the plaintiff's financial injury is not sufficient to support a finding of standing to proceed with this action.

### B. *Political Injury*

█ The plaintiffs further assert that, because of the Federal Defendants' grant of tax-exempt status to POB, the plaintiffs have suffered an unfair disadvantage in their ability to affect the political process. Specifically, the plaintiffs contend that the tax benefits enjoyed by POB give them greater resources with which to lobby the Town Board and Planning Board and consequent greater power in the political arena. In support of their position that such "political injury" is cognizable for standing purposes, the plaintiffs cite Judge Carter's decisions in *Abortion Rights Mobilization, Inc. v. Regan,* 544 F.Supp. 471 (S.D.N.Y. 1982) (*"Abortion Rights I"*) and *Abortion Rights Mobilization, Inc. v. Regan,* 603 F.Supp. 970 (S.D.N.Y.1985) (*"Abortion Rights II"*).

In *Abortion Rights I,* various individuals, clergy and organizations active in promoting the right of a woman to choose an abortion challenged the tax exemption granted to the Roman Catholic Church. The plaintiffs in that action contended that despite its tax-exempt status, the Roman Catholic Church was engaged in political activity contrary to the mandate of 26 U.S.C. § 501(c)(3). The injury alleged in *Abortion Rights I* was that the plaintiffs had

> been denied access to a means of contributing tax-deductible funds to promote free choice candidates. Persons with opposing views about abortion, on the other hand, [could] use the church to funnel donations to support candidates opposed to abortion and thereby receive a tax benefit.... The government defendants, it [was] alleged, ha[d] diminished the effectiveness of plaintiffs' political speech and their chances to prevail at the polls by enhancing the voice of plaintiffs' political adversaries.

*Abortion Rights I,* 544 F.Supp. 471, 475 (S.D.N.Y.1982). Relying primarily on the Supreme Court's decision in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Judge Carter found that the plaintiff's allegation "that some arbitrary government action impaired one group's ability to affect the political process in preference to a more favored group," *Abortion Rights I,* 544 F.Supp. at 42, created a discernible injury sufficient to confer standing on the plaintiffs. *Id.*

In *Baker v. Carr,* the Supreme Court granted standing to a group of Tennessee voters challenging that State's method of

apportioning the members of the General Assembly among the State's 95 counties. *Id.* at 187, 82 S.Ct. at 694. The plaintiffs claimed that they were injured because the method of classification used by the State disfavored the voters in some counties, "plac[ed] them in a position of constitutionally unjustifiable inequality *vis-a-vis* voters" in other counties. *Id.* at 207, 82 S.Ct. at 705. Because the individual's constitutional right to vote and the one man/one vote principle was at stake, these allegations were found sufficient to support a finding of Art. III standing. *Id.* at 208, 82 S.Ct. at 705.

Finding that "[t]he injury to oppressed voters is as distinct and palpable [in *Abortion Rights*] as in any of the previous cases," *Abortion Rights I*, 544 F.Supp. at 482,[5] Judge Carter expanded the doctrine of "voter standing" created in *Baker v. Carr* to encompass "government action which has improperly biased the political process against [a] discrete group." *Id.* at 481. In *Abortion Rights II*, decided on rehearing after the Supreme Court's decision in *Allen v. Wright*, the court reiterated that cognizable injury may be found in "unequal footing in the political arena." *Abortion Rights Mobilization v. Regan*, 603 F.Supp. 970, 974 (S.D.N.Y.1985).

Although the opinions generated by the *Abortion Rights* cases contain broad language,[6] the driving force of Judge Carter's decisions is the sanctity of the right to vote. In *Abortion Rights*, the injury complained of was the inability of the electorate to contribute tax-deductible funds to support a pro-choice political candidate when contributions to a pro-life candidate would be tax-deductible, and the inability of pro-choice candidates to collect tax-deductible and exempt funds for their campaign chests when their opponents could do so. *Abortion Rights I*, 544 F.Supp. at 475. Applying *Baker v. Carr* to the case before him, Judge Carter stated that "[b]oth cases center on allegations that some arbitrary government action diluted the strength of *voters* in one group at the expense of those in another." *Abortion Rights I*, 544 F.Supp. at 481 (emphasis added). Indeed, all three lower court cases relied on by Judge Carter involved injury to voter participation in the electoral process. *See Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Shakman v. Democratic Org.*, 435 F.2d 267, 269–70 (7th Cir. 1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971); *Tax Analysts and Advocates v. Shultz*, 376 F.Supp. 889, 899 (D.D.C.1974); *Common Cause v. Democratic Nat'l Comm.*, 333 F.Supp. 803, 808 (D.D.C.1971). As stated in *Abortion Rights II*, "*voters* have standing to contest the alleged infringement of their right to participate in the political process on equal terms with all others free from arbitrary government interference." *Abortion Rights II*, 603 F.Supp. at 973 (emphasis added).

We believe that the parameters of voter standing cannot be expanded to include generalized interference with the political process. Extension of the concept of voter standing to encompass governmental influ-

---

5. In addition to *Baker v. Carr*, Judge Carter's decision rested on three lower court decisions that applied *Baker*'s voter standing analysis. *See Shakman v. Democratic Org.*, 435 F.2d 267, 269–70 (7th Cir.1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971) (voter standing to challenge patronage system); *Tax Analysts & Advocates v. Shultz*, 376 F.Supp. 889, 899 (D.D.C.1974) (voter standing to challenge IRS revenue ruling regarding campaign spending); *Common Cause v. Democratic Nat'l Comm.*, 333 F.Supp. 803, 808 (D.D.C.1971) (voter standing to challenge limits on individual campaign contributions).

6. *See, e.g., In re United States Catholic Conference*, 824 F.2d 156, 165–66 (2d Cir.1987) ("The plaintiffs have claimed direct, personal injury arising from the fact that the federal defendants' failure to enforce the political action limitations of section 501(c)(3) has placed the plaintiffs at a competitive disadvantage with the Catholic Church in the arena of public advocacy on important public issues. That is a substantial basis on which to predicate standing."), *rev'd on other grounds*, —— U.S. ——, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988); *Abortion Rights Mobilization v. Regan*, 603 F.Supp. 970, 974 (S.D.N.Y.1985) (cognizable injury may be found in "unequal footing in the political arena"); *Abortion Rights Mobilization v. Regan*, 544 F.Supp. 471, 482 (S.D.N.Y.1982) (standing based on "allegations that some arbitrary government action impaired one group's ability to affect the political process in preference to a more favored group.").

ences in the arena of political speech and participation finds basis in neither law nor logic. The Supreme Court has been less than receptive to third-party challenges to the tax status of another. *See Allen v. Wright*, 468 U.S. 737, 748–49, 104 S.Ct. 3315, 3323, 82 L.Ed.2d 556 (1984) (citing with approval lower court's acknowledgement that *"Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), 'suggests that litigation concerning tax liability is a matter between taxpayer and IRS, with the door barely ajar for third party challenges.' "); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 46, 96 S.Ct. 1917, 1928, 48 L.Ed.2d 450 (1976) ("I add only that I cannot now imagine a case, at least outside the First Amendment area, where a person whose own tax liability was not affected ever could have standing to litigate the federal tax liability of someone else.") (Stewart, J., concurring).[7] The decisions generated by *Abortion Rights* stand as the sole instances of the "political standing" urged upon us. We do not feel, however, that an extension of the voter standing principles upon which *Abortion Rights* is grounded is warranted in this case.[8]

The plaintiffs herein do not claim that their constitutional right to participate in elective politics has been impinged. Rather, they complain of a diminished voice in the political arena due to the tax-exempt status of their political adversary. Inequality of resources and spending, however, is insufficient cause to invoke federal jurisdiction. Every participant in the political process must face opponents who are bigger and stronger than they. The federal courts must not be called on in each instance to even the score. Moreover, standing may not be predicated upon an assertion that the government has failed to act according to law. *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 482–83, 102 S.Ct. 752, 763–64, 70 L.Ed.2d 700 (1982). In a case, such as this, where the constitutional rights of the complaining party are not implicated, standing will not lie to challenge the tax status of a third-person.[9]

Accordingly, the defendants' motion to dismiss for lack of standing is granted. The clerk will enter judgment for the defendants.

SO ORDERED.

---

7. Indeed, we remain doubtful that section 501(c)(3) of the Internal Revenue Code creates a private right of action to challenge the tax-exempt status of another. Several cases have addressed the question of standing to sue while carefully avoiding the question of whether such a cause of action exists. *See, e.g., Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450 (1976) (need not reach "question of whether a third party ever may challenge IRS treatment of another"); *American Soc'y of Travel Agents, Inc. v. Blumenthal*, 566 F.2d 145, 150 n. 3 (D.C.Cir.1977) (same); *Research Consulting Assoc. v. Electric Power Research Inst., Inc.*, 626 F.Supp. 1310, 1313 (D.Mass.1986) ("Although the Supreme Court has shown a discernible hostility to suits attacking the tax exempt status of a third party, the Court specifically has avoided reaching the question 'of whether a third party ever may challenge IRS treatment of another.' ") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450 (1976)) (citations omitted). Because we dismiss this action for lack of standing, we need not consider whether such a cause of action is proper.

8. We recognize that the Second Circuit has expressed its agreement with Judge Carter's finding of standing in *Abortion Rights*. *In re United States Catholic Conference*, 824 F.2d 156, 165–66 (2d Cir.1987), *rev'd on other grounds*, —— U.S. ——, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988). On the facts of this case, however, we believe that the Second Circuit would reach a different conclusion. Although we are loathe to dissent from our brethren, the absence of voter standing in this case mandates a departure from Judge Carter's thoughtful analysis in *Abortion Rights*.

9. Because we find that neither of the plaintiffs' claimed injuries are sufficient to support a finding of standing, we need not address the prudential limitations on the standing doctrine.