**Hajji Abdullah AHMAD and Karima Ahmad**

v.

**INDEPENDENT ORDER OF FORESTERS.**

**Civ. A. No. 75–1851.**

United States District Court, E. D. Pennsylvania.

March 8, 1979.

---

724

Community Legal Services, Inc., David A. Scholl, Philadelphia, for plaintiffs.

Hyman Lovitz, Lovitz & Ludwig, P. A., Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is an employment discrimination suit brought pursuant to 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981"). The plaintiffs, Hajji Ahmad and his wife, Karima, claim that the defendant Independent Order of Foresters ("IOF"), a Canadian-based "fraternal benefit society", has discriminated against them on the basis of race, religion, sex, and national origin. This case was originally assigned to Judge Higginbotham, and was transferred to us in November 1977 following Judge Higginbotham's appointment to the Court of Appeals. The defendant has

filed eight motions to dismiss and strike which, for the reasons discussed below, we will deny.[1] We will also deny the motions filed *pro se* by the plaintiffs and by various individuals seeking to intervene in this case.

## I. FACTUAL BACKGROUND:[2]

In January 1974, the plaintiffs applied for positions as deputies with the IOF. The main function of IOF deputies is to sell life insurance through the organization. Plaintiff Karima was denied employment by the IOF because of its policy of not hiring husbands and wives for the same position; Karima was told that she could not be considered for a position as a deputy as long as her husband, Hajji, was being considered for a similar position.

Hajji was hired by the IOF pursuant to a contract dated February 1, 1974. His contract with the IOF provided that he would receive commissions based upon the life insurance contracts which he sold to new IOF members. During the first month of his employment, Hajji sold policies with premiums totalling over $600,000. It appears that the defendant suspected that something fraudulent was transpiring and withheld a portion of Hajji's commissions. Hajji, a black Hanafi Muslim, believed that he was being unlawfully discriminated against by the IOF, and in May 1974, the plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC") charging the IOF with discrimination on the basis of race, religion, sex, and national origin. Hajji's employment with the IOF was terminated by the defendant as of November 1, 1974.

On March 29, 1975, both plaintiffs received right to sue letters from the EEOC. The EEOC had dismissed the plaintiffs' claims, giving a lack of jurisdiction as the reason for the dismissal. In April 1975, the plaintiffs consulted Jonathan Black of the law firm of Black and Jackson, seeking to file an employment discrimination suit against the IOF. The ninety-day period for filing a Title VII suit would end on June 27, 1975. As of June 26, 1975, no Title VII suit had been filed on behalf of the plaintiffs. Therefore, on that date, Hajji filed a suit in federal court to compel Black and Jackson to institute a Title VII suit against the IOF. Judge Higginbotham signed an order permitting Hajji to serve Black and Jackson in that case. On June 27, 1975, Jonathan Black filed the original complaint in the instant case. He then moved to have his associate, Ronald Savage, appointed as a special process server in this employment discrimination case. On June 30, Judge Higginbotham granted Black's motion to appoint Savage as a special process server. Apparently, Savage never served the IOF, although later counsel for the plaintiffs who asked Jonathan Black about this were told by Black that he believed that Savage had made the service.[3]

On July 2, 1975, Black moved to withdraw himself and his law firm as the plaintiffs' counsel. On December 15, 1975, Judge Higginbotham granted that motion over the objection of the plaintiffs. Despite diligent efforts, the plaintiffs apparently had difficulty in obtaining another attorney to represent them.[4] They finally succeeded in obtaining representation by Community Legal Services and on March 8, 1977, an amended complaint was filed in this case. The defendant IOF was served with the amended complaint, and, as we have already noted, has moved to dismiss the amended complaint and the original complaint and to strike various matters from those pleadings.

---

1. The plaintiffs have brought this suit as a class action; in a stipulation signed by the parties and by Judge Higginbotham, it was agreed that the defendant need not respond to the motion for class determination until its motions to dismiss were ruled upon.

2. In ruling on the motions to dismiss we of course must view the complaint in the light most favorable to the plaintiffs. *Melo-Sonics Corporation v. Cropp*, 342 F.2d 856 (3d Cir. 1965).

3. *See* plaintiff Hajji's affidavit of July 25, 1977.

4. *Id.*

## II. MOTION TO DISMISS THE AMENDED COMPLAINT FOR IMPROPER SERVICE AND FOR AMENDMENT WITHOUT LEAVE OF COURT:

██ The defendant's initial motion is based upon its claim that it was improperly served with the amended complaint. The defendant argues that under Fed.R.Civ.P. 4 the clerk of the court cannot issue a summons upon an amended complaint, but only upon the original complaint, and that the amended complaint in this case should therefore be dismissed. This argument is specious; even if Rule 4 does not provide for service of an amended complaint, Rule 5 certainly does, and we hold that the defendant was properly served.

██ The defendant also argues that the plaintiffs were precluded from amending their original complaint without leave of the court because the original complaint had never been served. This claim cannot be sustained under Rule 15(a), which permits "a party [to] amend his pleading once as a matter of course at any time before a responsive pleading is served . . .". The Rule contains no requirement that the original pleading have been served before an amendment as of right. Indeed, as Professor Moore says:

> "Where . . . the original complaint has been superseded by an amended complaint, it is not proper thereafter to serve the original complaint with the summons."

2 *Moore's Federal Practice* ¶ 4.06, at 4–75 (2d ed. 1978). We therefore conclude that it was proper for the plaintiffs to amend their original complaint as of right although the defendant had never been served with the original pleading.

## III. MOTION TO DISMISS ORIGINAL COMPLAINT WITH PREJUDICE FOR FAILURE TO PROSECUTE AND MOTION TO STRIKE AMENDED COMPLAINT:

██ The defendant's second motion is based upon a claim that the plaintiffs failed to prosecute this action by not serving it with the original complaint and by then filing and serving an amended complaint nearly two years later. However, in determining the propriety of dismissal of this action for failure to prosecute we must consider not only the lapse of time between the initiation of the lawsuit and the notice to the defendant, but also: (1) the degree of personal responsibility of the plaintiffs for the delay; (2) the amount of prejudice to the defendant; and (3) whether the record of the case indicates a drawn-out history of deliberate dilatoriness. *McCargo v. Hedrick*, 545 F.2d 393 (7th Cir. 1976).

The first step of the above test requires us to consider the personal wrongdoing, if any, of the plaintiffs. In this case, the failure to serve the defendant with the original complaint should not be blamed upon the individual plaintiffs. Their original attorney, Jonathan Black, specially moved for the appointment of his associate as a process server; the plaintiffs were not responsible for the failure by this attorney to do that which he was appointed to do.

Dismissal of a lawsuit is an extremely harsh sanction to impose upon individual litigants for the shortcomings of their attorneys; it would be unduly harsh in *this* case since the defendant has not shown how it has been prejudiced by the delay in service, a showing which is relevant under the second prong of the *McCargo* test.

Although the defendant has filed an affidavit by its secretary purporting to set forth the prejudice it has suffered from the failure by the plaintiffs to serve the original complaint, this affidavit fails to disclose any real prejudice. The original complaint named as defendants the IOF and three individuals who worked for the IOF. The amended complaint dropped the three individuals as defendants because they no longer work for the IOF. The IOF claims that it does not know the whereabouts of these persons and that it will be prejudiced by their unavailability, but it does not explain why it will be so prejudiced. The IOF also claims that it has been prejudiced because it has expended a great deal of time and money in reconstructing the 1974 facts; however, if the IOF has indeed been able to

"reconstruct" the facts it can mount a defense and is therefore not truly prejudiced in this case. Indeed, a good portion of the affidavit is really a defense on the merits and indicates that the defendant *will* be able to defend this lawsuit and has not been prejudiced.

Finally, the defendant claims that "important documents" cannot now be located and that these documents would have been of help in its defense. However, as the plaintiffs point out, the statute of limitations for an employment discrimination suit against the IOF based upon § 1981 had not run in 1977 when the amended complaint was filed, and the IOF would have been foolish to destroy these "important documents" before the limitations period had expired. Also, the defendant was· put on notice that an employment discrimination suit might be brought by the fact that the plaintiffs had filed charges against the defendant with the EEOC. Therefore, the plaintiffs should not suffer if in fact that defendant has irresponsibly destroyed important documents.

The final element of the *McCargo* test is the determination of whether the record of the case indicates deliberate dilatoriness on the part of the plaintiffs. If anything, Hajji Ahmad has been eager to prosecute this action. This is clear from the numerous *pro se* papers which he has filed in connection with this case. Again, the sole delay in this case was caused by an attorney, not by the plaintiffs.

In deciding whether to dismiss this action for failure to prosecute, we have considered all the circumstances of the case and have balanced any personal blameworthiness by the plaintiffs against any prejudice to the defendant. We have also borne in mind the Third Circuit's admonition in *Dyotherm Corp. v. Turbo Machine Co.*, 392 F.2d 146, 148–149 (3rd Cir. 1968) that dismissal is a harsh sanction which should be resorted to only in extreme cases. Since it does not appear that the plaintiffs have intentionally engaged in misconduct or in dilatory tactics, and since it also does not appear that the defendant has been prejudiced by the delay

in this case, we will not dismiss this action for failure to prosecute.

## IV. MOTION TO STRIKE THE CLASS:

■ The defendant next moves to strike "the class" as being an improper party plaintiff in the amended complaint, since the class was not named as a party in the original complaint. The basis for this motion is the defendant's assertion that under Rule 21 a party may be dropped or added only by an order of the court. The defendant therefore claims that leave of the court was essential before a class action allegation could be added to this case. The defendant also claims that it would be improper for the court to allow an additional party to be added nearly two years after the filing of the original complaint. The plaintiffs claim that the putative class is not a party, and that their addition of a class action allegation in the amended complaint is a procedural change only.

Whether or not the class is a party plaintiff, it has not been, and cannot be, added to his lawsuit until such time as we grant the plaintiffs' motion for class determination. Thus, the plaintiffs have *not* added a party without leave of the court. But even if the class could be considered to have been "added" in the sense that the plaintiffs do refer to it in their amended complaint, we will follow as correct the holding in *De Malherbe v. International Union. of Elevator Constructors*, 438 F.Supp. 1121 (N.D.Cal. 1977).

*De Malherbe* was an employment discrimination suit in which the plaintiff originally sought to represent only himself, but added class action allegations in his first and second amended complaints. The defendant moved to strike the class action allegations because the plaintiff had failed to obtain leave of the court to include them when he amended his complaint. In denying the defendant's motion to strike, the court noted that generally, amendments of complaints before the defendant has filed a responsive pleading are permitted as a matter of course without leave of the court under Rule 15(a). The court believed that

putative classes *are* parties within the meaning of Rule 21, but concluded that Rule 15 prevails when a plaintiff adds parties before a responsive pleading is served. Therefore, the court held that the plaintiff had properly added the class action allegation without leave of the court. The court reasoned as follows:

> "Although turning an individual action into a class action fundamentally affects the character of the lawsuit, the addition of new parties does not as a general rule affect the interests of parties already in the lawsuit significantly more than the addition of new claims. Plaintiffs have complete freedom to name parties when they commence an action, and the interests of defendants will not be substantially prejudiced in the early stage of a lawsuit by any delay in adding parties. Indeed, courts would grant motions to add parties at the early stages of litigation almost as a matter of course since the liberal standard of Rule 15 also applies to Rule 21 motions. [citation omitted.] Consequently, involving the court in these matters serves no useful purpose and simply imposes an unnecessary burden on courts and litigants alike."

438 F.Supp. at 1128. The Fifth Circuit reached a similar conclusion in *McLellan v. Mississippi Power & Light Company*, 526 F.2d 870 (5th Cir. 1976) *modified en banc on other grounds*, 545 F.2d 919 (1977), and permitted a plaintiff to amend his complaint without leave of the court and add additional defendants before the service of a responsive pleading by the original defendant.

In our case, all that the plaintiffs have done is to begin their lawsuit again by filing and serving an amended complaint at a time when no answer to the original complaint had been filed. It would serve no useful purpose to require the plaintiffs to seek leave of the court to do that which they could have done without such leave in their original complaint.[5]

## V. MOTION TO STRIKE PENDENT CLAIM:

■ The defendant's fourth motion is one to strike the plaintiff Hajji's claim for wages allegedly due to him under state law. Hajji has asserted this claim under our pendent jurisdiction. The defendant claims that the plaintiff was required to seek leave of the court before asserting, in his complaint, that we have pendent jurisdiction over this claim. Defendant's suggestion is of course frivolous. While it is true that the *exercise* of pendent jurisdiction is a matter for our discretion, a plaintiff does not require leave of the court to *raise* a pendent claim in his or her complaint.

## VI. MOTION TO DISMISS TITLE VII CLAIM:

■ The defendant's first substantive claim is that we lack jurisdiction under Title VII because the IOF is not an employer within the meaning of the statute. That statute, at 42 U.S.C. § 2000e(b), excludes from the definition of employer "a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of [the Internal Revenue Code of 1954] . . . ." The defendant notes that it is exempt from taxation under section 501(c)(8) of the IRS Code of 1954, and has submitted a copy of the document granting it such tax-exempt status.

However, as the plaintiffs correctly argue, the matter does not end there. It is for us to determine not only whether the defendant is tax-exempt, but *also* whether it is indeed a "bona fide private membership club". Whether or not the IOF is such a club is a question of fact, the determination of which will require at the very least the submission of affidavits and possibly the holding of an evidentiary hearing; the determination cannot be made in ruling on a motion to dismiss. The defendant also

---

5. Our adoption of the *De Malherbe* holding that Rule 15 governs when parties are added or dropped before a responsive pleading has been filed also disposes of defendant's claim that the three individuals named as defendants in the original complaint were improperly dropped as defendants in the amended complaint without leave of the court.

claims that its deputies are not employees within the meaning of Title VII. The basis for this claim is the defendant's bald assertion that its deputies are independent contractors. Again, this is a factual matter and not one which we can decide on a motion to dismiss.

## VII. MOTION TO DISMISS § 1981 CLAIM:

The defendant has moved to dismiss the plaintiffs' § 1981 claim, arguing that we should read into § 1981 the Title VII exemption for "bona fide private membership clubs". Whether or not such a restriction of § 1981 is warranted or can be justified under the existing case law, it must first be established that the defendant is *indeed* a "bona fide private membership club". For the reasons stated in Section VI, *supra*, this is an evidentiary matter which we cannot decide on a motion to dismiss.

## VIII. MOTION TO DISMISS CLAIM OF RETALIATION FOR LACK OF SUBJECT MATTER JURISDICTION:

The defendant next moves for a dismissal of Count III of the amended complaint; that Count alleges that Hajji's contract with the defendant was terminated in retaliation for his attempting to seek redress from the EEOC under Title VII. The defendant notes that Hajji did file a charge of retaliation with the EEOC, but that that charge was filed in May 1974, and was not based upon a discharge from employment. Hajji was not fired by the IOF until November 1974, and after that date did not file a new charge with the EEOC, nor did he amend his existing charges. The defendant claims that this court is therefore without jurisdiction over the subject matter of Count III, and that the plaintiff Hajji has not stated a claim upon which relief may be granted. The defendant's claim is founded upon the requirement that a plaintiff must file a timely charge with the EEOC as a jurisdictional prerequisite to the bringing of a Title VII suit in the district court.

The defendant is correct in its statement that the filing of a charge with the EEOC is a jurisdictional prerequisite to the bringing of a lawsuit in federal court, but the Third Circuit has stated that:

"Courts have generally determined that the parameters [sic] of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, [citations omitted], including new acts which occurred during the pendency of proceedings before the Commission, [citation omitted]."

*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–399 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). Hajji's dismissal of course occurred during the pendency of the EEOC proceeding, and is therefore within the perimeter of his civil action charging discrimination. We may therefore consider Hajji's claim that his dismissal was ordered in retaliation for his filing of charges with the EEOC.

Also, the plaintiffs argue that Hajji filed his complaint with the EEOC as a *continuing* violation, and that in such circumstances it is not necessary for the complainant to file additional charges with the EEOC. This argument is a sensible one; to hold otherwise would require that a charging party return to the EEOC each time a new incident of discrimination occurs. Such a requirement is clearly unnecessary; the filing of an initial charge with the EEOC puts the employer on notice that there is a charge of discrimination pending against it, and permits the EEOC to proceed with an investigation of that employer. We therefore conclude that the plaintiffs have satisfied the jurisdictional prerequisites for the bringing of this lawsuit.

## IX. MOTION TO STRIKE THE PLAINTIFFS' PRAYER FOR RELIEF:

Finally, the defendant has moved to strike the plaintiffs' prayer for compensatory and punitive damages. The defendant claims that neither compensatory nor punitive damages are available in a Title VII suit, and that any relief prayed for under § 1981 must pertain only to Hajji, since Karima is white and a woman and

§ 1981 does not apply to claims of sex discrimination.

In reply, the plaintiffs concede that in this Circuit, under *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977), punitive damages are not available to plaintiffs in Title VII cases. However, the plaintiffs vigorously contest defendant's assertion that compensatory damages are not available in Title VII cases. Indeed, the Third Circuit has approved the award of such damages in *Rosen v. Public Service Electric and Gas Company*, 477 F.2d 90 (3d Cir. 1973). In *Richerson*, the Third Circuit did not overrule *Rosen*, but distinguished it in a footnote. 551 F.2d at 926–27, n. 13. Therefore, we will strike only plaintiff Karima's prayer for punitive damages.

## X. PRO SE PAPERS:

 The plaintiffs, although represented by counsel, have filed *pro se* numerous irrelevant papers in this lawsuit. In addition, plaintiff Hajji claims to have been given a power of attorney from fifteen other persons and entities, such as the "Registered Foreign Agents" and the "Executive Syndicate". These fifteen other persons and entities have sought intervention in this lawsuit, although the claims they seek to raise are not related to the employment discrimination claims of this action. The plaintiff Hajji has already tried to inject into this lawsuit other parties who also have no relation to the case; on September 5, 1975, Judge Higginbotham issued an order denying Hajji's *pro se* motions to add as parties numerous individuals, including Anwar Sadat, Yassir Arafat, Richard Nixon, Benjamin Bradlee, Kurt Waldheim, the president of Libya, the president of the Sudan, and Sam Ervin. We can find no justification for granting the latest motion to intervene and we will therefore deny that motion and the *pro se* motions for joinder filed by the fifteen individuals and entities.

---

**6.** The defendant has moved that we strike an affidavit filed *pro se* by Hajji on October 18, 1977. Since this document was not signed by

Hajji has also filed, *pro se*, a deposition by written questions to the EEOC. The EEOC has moved for a protective order and we will grant its motion.

 The defendant, confused over the numerous *pro se* filings, has asked us to determine who is counsel of record for the plaintiffs. At this time, the Community Legal Services and its attorney, David A. Scholl, are counsel of record for the plaintiffs. Since the plaintiffs are represented by an attorney, their pleadings and other papers must be signed by him, as required by Fed.R.Civ.P. 7 and 11. In order to further the goal of expeditiously resolving this lawsuit, we will order that the defendant need not respond to any papers filed *pro se* by the plaintiffs so long as they continue to be represented by counsel.[6]

---

plaintiffs' counsel, as required by Rule 11, nor annexed to any papers filed by counsel, we will grant defendant's motion.