Andrew and Kelly **ZIMMERMAN,**
Plaintiffs

v.

**CAMBRIDGE CREDIT COUNSELING CORP., et al., Defendants**

No. **CIV.A.03–30261–MAP.**

United States District Court,
D. Massachusetts.

June 24, 2004.

Gregory S. Duncan, Charlottesville, VA, Stephen G. Hennessy, Milton, MA, Garrett M. Smith, Michie Hamlett, Lowry Rasmussen & Tweel, PLLC, Charlottesville, VA, David J. Vendler, Morris, Polich & Purdy, LLP, Angeles, CA, for Andrew Zimmerman, Kelly Zimmerman, Plaintiffs.

Lawrence M. Kraus, Epstein, Becker & Green, PC, Boston, MA, for Brighton Credit Corp., Brighton Credit Corp. of Massachusetts, Cambridge Credit Corp., Cambridge Credit Counseling Corp., Cambridge/Brighton Budget Planning Corp., John Puccio, Richard Puccio, Defendants.

Michael J. Tuteur, Epstein, Becker & Green, PC, Boston, MA, for Brighton Credit Corp., Brighton Credit Corp. of Massachusetts, Cambridge Credit Corp., Cambridge Credit Counseling Corp., Cambridge/Brighton Budget Planning Corp., John Puccio, Richard Puccio, Defendants.

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS

**(Docket No. 12)**

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiffs Andrew and Kelly Zimmerman filed a class action suit against defendants

Cambridge Credit Counseling Corp. ("Cambridge"), Cambridge/Brighton Budget Planning Corporation ("C/B"), Cambridge Credit Corp. ("CCC"), Brighton Credit Corp. ("BCC"), Brighton Credit Corporation of Massachusetts ("BCCM"), John Puccio, and Richard Puccio (collectively the "defendants"). The five defendant corporations, owned by the Puccio brothers, purport to provide consumer credit counseling.

Along with various state law claims, the complaint alleges violations of two federal statutes, the Credit Repair Organizations Act (15 U.S.C. § 1679 *et seq.*) ("CROA") and the Federal Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*) ("FDCPA"). Subject matter jurisdiction is predicated upon the claims pursuant to CROA and the FDCPA. Defendants' motion posits several alternative grounds for dismissing plaintiffs' federal claims, thereby eliminating federal jurisdiction over this suit. For the reasons discussed below, plaintiffs' claims based on CROA and the FDCPA will be dismissed. Without adequate basis for jurisdiction, the court will exercise its discretion to dismiss the plaintiffs' remaining state law claims without prejudice to their re-filing in state court.

## II. *FACTS*

The facts, of course, are accepted for purposes of this motion as true, as they are alleged in the complaint.

Burdened by debt, the Zimmermans sought help from Cambridge on December 20, 2001. They had become aware of Cambridge through its advertisements on television, on the radio, and in print, and were attracted by its claims about lowering interest rates, eliminating fees, "re-aging" accounts, and otherwise helping consumers manage their debt. Because Cambridge advertised itself as a nonprofit corporation, the Zimmermans believed that they would charge less than a typical for-profit company.[1]

The Zimmermans signed a Service Agreement with Cambridge dated January 3, 2002 (the "Agreement"). They signed an identical agreement on January 7, 2002, because the first January 3 agreement was not entirely legible. The Agreement stated that Cambridge would create a debt management program ("DMP") for the Zimmermans in order to consolidate their debt, obtain concessions from their creditors where possible, and distribute their monthly payments to the creditors. The Zimmermans agreed to pay Cambridge a fee of $948 per month for this service.

Four months later, the Zimmermans were dissatisfied with the counseling they had received: their accounts had not been re-aged, they owed more money than they did prior to seeking Cambridge's help, and their credit report was worse than ever. On September 20, 2002, the Zimmermans cancelled their account with Cambridge because they had decided to use another credit counseling agency. The Zimmermans claim that Cambridge failed to offer the sort of unbiased educational programs that they expected from a nonprofit organization, and also that Cambridge's nonprofit status is a sham because the Puccios are making a substantial income.[2] Never-

---

1. The Zimmermans have had no contact with any of the defendant corporations besides Cambridge. Nonetheless, plaintiffs claim that all of the defendant corporations are owned by the Puccios and are purposefully interwoven in a web designed to avoid detection and perpetrate fraud.

2. The Puccios have received generous salaries from Cambridge in recent years: $210,400 each in 1998; $271,600 each in 1999; $312,000 each in 2000; $391,958 each in 2001; and $624,000 each in 2002. Cambridge's general manager, Chris Viale, also received a generous salary: $167,713 in 1998;

theless, Cambridge was and remains classified by the Internal Revenue Service ("IRS") as a nonprofit, tax-exempt entity pursuant to section 501(c)(3) of the tax code.[3]

## III. *DISCUSSION*

Plaintiffs assert federal jurisdiction on the basis of 28 U.S.C. § 1331 because their complaint involves federal questions pursuant to CROA and the FDCPA. Defendants have offered four grounds for dismissing the FDCPA claim and two grounds for dismissing the CROA claim. According to the defendants, the FDCPA claim must be dismissed because (1) the claim is barred by the statute of limitations; (2) the FDCPA applies only to "debt collectors" and Cambridge is not a debt collector; (3) Cambridge is statutorily exempt from the FDCPA because it is classified by the IRS as an entity within section 501(c)(3) of the tax code; or (4) plaintiffs have failed to state a claim as required pursuant to Fed.R.Civ.P. 12(b)(6). Similarly, defendants assert that the CROA claim must be dismissed because (1) CROA applies only to "credit repair organizations" and Cambridge is not a credit repair organization; and (2) Cambridge is exempt from CROA because of its 501(c)(3) status. Because this court concludes that the FDCPA claim should be dismissed based on the applicable statute of limitations and that the CROA claim should be dismissed based on Cambridge's statutory exemption as a 501(c)(3) entity, further discussion of the less compelling grounds for dismissal offered by defendants is unnecessary. Each statute is addressed separately below.

## A. *Federal Debt Collection Practices Act*

The FDCPA contains an explicit one-year statute of limitations: a suit must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Zimmermans filed suit on November 3, 2003, more than one year after they severed ties with Cambridge on September 20, 2002. Because any violation had to have occurred before the Zimmermans severed their relationship with Cambridge, the statute of limitations is fatal to plaintiffs' FDCPA claim.

■ Plaintiffs' attempt to resuscitate their FDCPA claim using the doctrine of equitable tolling is not persuasive. "Federal courts have typically extended equitable relief only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). While the doctrine of equitable tolling may be available to those plaintiffs who have failed to satisfy the statute of limitations because they were actively misled or bamboozled by defendants, plaintiffs bear the burden of showing that equitable tolling is necessary. *See Irwin*, 498 U.S. at 96, 111 S.Ct. 453; *Jensen v. Frank*, 912 F.2d 517, 521 (1st Cir.1990); *Jonker v. Kelley*, 268 F.Supp.2d 81, 86 (D.Mass.2003). Here, plaintiffs do not satisfy their burden in this regard. They merely claim to have been misled by "defendants' fraudulent concealment of the FDCPA's application to their business" (Plaintiffs' Complaint, ¶ 164).

This allegation, even if true, would not justify invocation of equitable tolling. Plaintiffs cannot and do not claim that

---

$185,562 in 1999; $234,172 in 2000; $394,122 in 2001; and $374,726 in 2002. In 1997, Cambridge reported assets of $85,726, but by 2002 it had assets of $25,736,642.

**3.** Section 501(c)(3) refers to "[c]orporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes ...." 26 U.S.C. § 501(c)(3).

they were ever misled by the defendants about the application of the statute of limitations itself; nor can they deny being on notice of the applicable limitations period. Under these circumstances, normal operation of the statutory bar is fatal to plaintiffs' claim.

## B.   *Credit Repair Organizations Act*

The statute of limitations in CROA is five years, and so plaintiffs' CROA claim is not barred on that basis. However, defendants claim that plaintiffs' CROA claim must be dismissed on equally succinct grounds, *i.e.*, because Cambridge is expressly exempt from CROA. By its terms, CROA does not apply to "any nonprofit organization which is exempt from taxation under section 501(c)(3) of Title 26 [of the United States tax code]," 15 U.S.C. § 1679a(3)(B)(i). It is undisputed that Cambridge is, in fact, explicitly categorized by the IRS as a nonprofit organization, exempt from taxation under 501(c)(3) of Title 26.[4]

Nevertheless, plaintiffs assert that the IRS's classification of Cambridge as a 501(c)(3) entity is not dispositive on the issue of whether Cambridge is exempt from CROA. Rather, plaintiffs contend that this court should determine for itself, based on an evidentiary hearing following discovery, whether Cambridge qualifies for an exemption under CROA. As support for their position, plaintiffs cite three reported decisions and one unreported order. As discussed below, none of these decisions is persuasive.

Plaintiffs rely heavily on language contained in an unpublished, two-paragraph order dated August 12, 2003, in a case from the Central District of California entitled *Placsek v. Debticated Consumer Counseling, Inc. et al.*, Case No. SACV 03–01003 CJC (Ctx). In conclusory fashion and without citation to any precedential legal authority, this order blankly states that, in the context of a CROA claim, "[t]his Court is not bound by the IRS determination that [the defendant] is a 501(c)(3) corporation. The Court must make its own independent determination in this regard after an evidentiary hearing." As far as it goes, this order certainly supports plaintiffs' proposition. However, since it provides no legal analysis of the issue, it is of negligible value as precedent.

Two district court decisions on which plaintiffs rely simply are inapposite. In *Ahmad v. Independent Order of Foresters*, 81 F.R.D. 722 (E.D.Pa.1979), a Title VII case, the defendant claimed to be statutorily exempt as "a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c)(3)." 81 F.R.D. at 728. Contrary to plaintiffs' reading of *Ahmad*, the district court recognized the bifurcated analysis required, accepting that the defendant was "exempt from taxation under section 501(c)(3)" pursuant to its classification by the IRS, but querying the defendant's status as a "bona fide private membership club." *Ahmad*, 81 F.R.D. at 728. Similarly, in *Wright v. Cork Club*, 315 F.Supp. 1143 (S.D.Tex.1970), a case brought under Title II of the Civil Rights

---

**4.** Defendants make a similar argument with regard to the FDCPA claim, but the language of the FDCPA differs from CROA in one important respect. By its terms, the FDCPA does not apply to "any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors." 15 U.S.C. § 1692 a(6)(E). Although, by definition, all 501(c)(3) entities are nonprofit organizations, the FDCPA exemption includes a second prong—performance of bona fide consumer credit counseling and other assistance—that is absent from CROA.

Act of 1964, the question was simply whether the defendant was statutorily exempt as "a private club," and the district court declined to accept the fact that the IRS had classified the defendant as a 501(c)(3) entity pursuant to the tax code's "Social Club" provision as conclusive proof that the defendant was a private club within the meaning of the Civil Rights Act.

Finally, plaintiffs rely on dicta from the district court's decision in *Richie v. American Council on Gift Annuities, et al.,* 943 F.Supp. 685, 690 (N.D.Tex.1996), stating that the IRS's classification of defendants as 501(c)(3) entities was not conclusive proof of their status as "persons described in section 501(c)(3)" or "exempt from taxation under section 501(c)(3)" pursuant to the Charitable Gift Annuity Antitrust Relief Act ("Relief Act"). Instead, the district court determined that the defendants bore the burden of proving that they were, in fact, "persons described in section 501(c)(3)" or "exempt from taxation under section 501(c)(3)" pursuant to the Relief Act, and that their 501(c)(3) status could be introduced as evidence. On appeal, the Fifth Circuit found it unnecessary to consider whether the defendants were statutorily exempt based exclusively on their 501(c)(3) status, and Congress subsequently revised the Relief Act specifically in order to render the district court's determination moot.

█ In sum, there is only the most slender sliver of authority for the proposition plaintiffs propose. A glance at the possible ramifications of plaintiffs' argument reveals why few courts have (even arguably) adopted it. If courts possessed the power, as plaintiffs suggest, to go behind the IRS's designation and proceed to make their own independent determinations, on a case-by-case basis, of an entity's substantive classification according to section 501(c)(3), the uncertainty not only for the entity itself, but for all persons or parties dealing with it, would be almost boundless. An entity might enjoy 501(c)(3) status for some purposes and not for others, or before some courts and not others. Every 501(c)(3) entity would have to be on guard for the possibility that at some future date, in some discrete piece of litigation, some action or some failure to act on its part might be construed as justifying forfeiture of some of the myriad protections afforded by 501(c)(3) status. Much is gained by giving the IRS exclusive power to award 501(c)(3) status and, where appropriate, to remove that status. Much would be lost by making an entity's 501(c)(3) status, and subsequent statutory protections, dependent on any trial court's *ad hoc* determination. While conceivably situations may arise where a court would be justified in looking behind the IRS' determination of 501(c)(3) status, this case does not present one.

█ In other cases where plaintiffs challenged defendants' 501(c)(3) status in the context of statutes providing special treatment for 501(c)(3) entities, the courts consistently have assumed that, to make this challenge, the litigant would be required to attack the IRS's 501(c)(3) designation directly. *See Fulani v. League of Women Voters Educ. Fund,* 882 F.2d 621 (2d Cir.1989); *Research Consulting Assocs. v. Electric Power Research Institute,* 626 F.Supp. 1310 (D.Mass.1986). To do this as a threshold matter, a party must have standing in order to challenge the merits of the IRS's 501(c)(3) designation. Standing in this context requires "(1) an injury in fact, (2) fairly traceable to the granting of tax-exempt status . . . (3) that is likely to be redressed by enjoining the further grant of tax-exempt status." *Research Consulting Assocs.,* 626 F.Supp. 1310, 1313 (D.Mass.1986). *See also Allen v. Wright* 468 U.S. 737, 104 S.Ct. 3315, 82

L.Ed.2d 556 (1984); *Becker v. FEC*, 230 F.3d 381, 385 (1st Cir.2000). In this circumstance, standing is construed narrowly, leaving "the door ... only barely ajar" for those seeking it. *Research Consulting Assocs.*, 626 F.Supp. at 1313. Any standing claim by the Zimmermans would clearly fail to satisfy the second prong. The only strand connecting Cambridge's tax-exempt status to plaintiffs' alleged injury is the statement that they chose Cambridge because they assumed a nonprofit would charge lower rates. This, alone, does not render plaintiffs' alleged injury "fairly traceable" to Cambridge's tax exempt status. Under these circumstances, defendants are clearly exempt from application of the CROA.

## IV.  CONCLUSION

For the reasons set forth above, defendants' Motion to Dismiss (Docket No. 12) is hereby ALLOWED. The clerk is ordered to enter dismissal without prejudice as to plaintiffs' remaining state law claims. This file may now be closed.

It is So Ordered.