Christie **LIMPERT** and **Vivian Fonteboa, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**CAMBRIDGE CREDIT COUNSELING CORPORATION., et al., Defendants.**

No. CV–03–5986.

United States District Court, E.D. New York.

Aug. 5, 2004.

---

G. Oliver Koppell, John F. Duane, Paul E. Kerson, Koppell, Leavitt, Kerson & Duane, LLP, New York City, for Plaintiffs.

Lawrence M. Kraus, Michael J. Tuteur, Epstein, Becker & Green, P.C., Boston, MA, Paul M. Kaplan, David J. Clark, Epstein Becker & Green, P.C., New York City, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants the Cambridge Credit Counseling Corporation, *et al.*, move under Federal Rules of Civil Procedure 12(b)(1) and (6) for dismissal of the claims brought against them by class action Plaintiffs Christie Limpert and Vivian Fonteboa. Plaintiffs sued Defendants under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, ["FDCPA"]; the Credit Repair Organization Act, 15 U.S.C. §§ 1679 *et seq.*, ["CROA"]; and the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 *et seq.*, ["RICO"]. Oral argument was heard on July 15, 2004.

For the following reasons, Defendants' Rule 12(b)(1) motion is **DENIED**. Defendants' motion is **GRANTED**, pursuant to Rule 12(b)(6), as to Plaintiffs' FDCPA claims, and these claims are dismissed **WITH PREJUDICE**. Defendants' Rule 12(b)(6) motion is **GRANTED** as to Plaintiffs' CROA claims against Cambridge Brighton and Cambridge Credit Counseling, and these claims are also dismissed **WITH PREJUDICE**, but Defendants' motion is **DENIED** as to Plaintiffs' CROA claims against the remaining eight Defendants. Defendants' motion is **GRANTED,** under Rule 12(b)(6), as to Plaintiffs' RICO claims, yet these are dismissed **WITHOUT PREJUDICE** and with **LEAVE TO RE-FILE**.

## Background

The class action Plaintiffs in this case are consumers alleged to be enrolled in debt management plans ["DMPs"]. These plans are alleged to have been "created and administered by ... Defendants through unlawful, false, misleading, deceptive and unfair trading practices" in violation of the FDCPA, CROA and RICO. Defendants are eight credit counseling corporations and partnerships owned by individually-named Defendants Robert Henle and John and Richard Puccio. They offer indebted consumers DMPs in which "consumers agree to pay their unsecured debts to Defendants, who then disburse the payments to consumers' creditors." These payments are purportedly disbursed in exchange for *sub rosa* fees collected from both debtors and creditors, and with chimerical promises offered to debtors of, *inter alia*, lower credit card balances and interest rates, fewer late fees, and improved credit ratings. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 1–2.

Plaintiffs offer evidence that the credit counseling industry is rife with abuse. They cite the records of congressional hearings held by the Senate's Governmental Affairs and the House of Representatives' Ways and Means Committees, testimony given to these bodies by Federal Trade Commission and Internal Revenue Service officials, and legal action taken by the Attorney General of the Commonwealth of Massachusetts, as illustrative of

the problem. Indeed, Congress is presently considering legislation to deal with these problems—specifically, the Debt Counseling, Debt Consolidation, and Debt Settlement Practices Improvement Act of 2003. *See id.* at 5–6; *see also* Defendants's Memorandum of Law in Support of their Motion to Dismiss at 6 (citing H.R. 3331, 108th Congress, 1st Sess., available at http://thomas.loc.gov).

Defendants argue in response to Plaintiffs' 42–page Complaint that two of the three statutes sued upon by Plaintiffs, the FDCPA and CROA, do not apply to credit counselors, as they themselves are neither debt collectors nor credit repairers, and that the predicates of the third statute, RICO, are insufficiently pleaded. *See* Defendants' Memorandum, *passim.*

Defendants are mostly correct. Plaintiffs' citation of evidence that legislators and regulators are perhaps justifiably concerned with claimed abuses in the credit counseling industry shows that existing statutory remedies and administrative oversight are insufficient, and that current laws—the laws, such as the FDCPA and CROA, upon which Plaintiffs sue—do *not* offer relief for the alleged wrongs perpetrated against Plaintiffs by all of the named Defendants. The democratic process may soon provide Plaintiffs with mechanisms through which to address their possibly legitimate grievances against the credit counseling industry. Unless and until the Executive and the Legislature do so, however, Plaintiffs may not shoe-horn the facts of their Complaint into the FDCPA, which deals with debt collection. Plaintiffs may or may not be able to fit their claims against some Defendants within the parameters of the CROA, which deals with debt repair, if Defendants are in fact representing that they offer

debt repair services and not solely credit counseling services. Plaintiffs may rely upon the RICO statute, but they must first allege its statutory predicates with sufficient particularity.

## Standard of Review

On their motion to dismiss Plaintiffs' Complaint under Rule 12(b)(6), for failure to state a claim upon which relief may be granted, Defendants bear the burden of showing that even if the Complaint's allegations are accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor, Plaintiffs are still not entitled to the relief they seek. Dismissal is proper only if no relief could be granted under any set of facts consistent with Plaintiffs' allegations.[1]

## Discussion

### A. *Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.,* addresses abusive dunning conduct. The FDCPA defines a debt collector as any person who collects debts owed to another. *See* 15 U.S.C. § 1692(a)(6). The FDCPA does not apply to "any nonprofit organization which, at the request of consumers, performs *bona fide* consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors." *Id.*

The FDCPA intends to restrain collection practices including:

obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends neighbors or an employer, obtaining information

---

1. Drawing reasonable inferences in their favor, in light of factual disputes set forth at oral argument regarding the expiration of the statute of limitations, the Court will not dismiss Plaintiffs' claims under Rule 12(b)(1) for lack of jurisdiction.

about a consumer through false pretenses, impersonating public officials and attorneys, and simulating legal process.

S.Rep. No. 95–382, 95th Cong., 1st Sess. at 2, *reprinted in* 1977 U.S.C.C.A.N.1965, 1696; *cited in* Defendants's Memorandum at 4–5.

Defendants argue that they are credit counselors, and not debt collectors, and that Plaintiffs' representations to the contrary are "conclusory statements, lacking any factual underpinning." Defendants emphasize that they are not retained by *creditors,* they are instead retained by *debtors.* Defendants' Memorandum at 17–18; *see also* Defendants' Reply Memorandum at 4–5.

Plaintiffs respond that Defendants are, in fact, debt collectors within the meaning of the FDCPA. They point to Section 1692(a)(6)'s definition of a debt collector as any person who collects debts owed to another. Plaintiffs suggest that under the plain language of the statute, Defendants qualify as debt collectors, because they assume the debts of others, and then satisfy their creditors. *See* Plaintiffs' Memorandum at 14–15.

The available case law regarding this issue is quite thin. Two cases helpfully brought to the Court's attention by both parties—*Goldstein v. Hutton,* 374 F.3d 56 (2d Cir.2004); and *Zimmerman v. Cambridge Credit Counseling Corp,* 322 F.Supp.2d 95 (D. Mass.2004)—are instructive, but not decisive.

In *Goldstein,* the United States Court of Appeals for the Second Circuit considered whether a law firm admittedly involved in debt collection was "regularly" engaged in debt collection within the meaning of Section 1692(a)(6). *Id.* at 61. Here, the question is whether Defendants were engaged in debt collection at all.

In *Zimmerman,* the United States District Court for Massachusetts, in a case involving the same lead Defendant as in the case *sub judice,* dismissed the plaintiff's FDCPA claim, but on the grounds of the expiration of the statute of limitations. *See id.* at 98–99; *cf.* n. 1, *supra.*

■ The Court finds that while the distinction between credit counseling and debt collection is finely cut, it is nonetheless controlling. No debtor ever retained a debt collector to collect a debt from himself. In the case at bar, Plaintiffs, whether wisely or unwisely, voluntarily retained Defendants to obtain their credit counseling services. While these "counseling" services involve Defendants assuming Plaintiffs' debts, and while Defendants do receive fees from Plaintiffs' creditors, there is no allegation that Defendants unilaterally seek out Plaintiffs to unlawfully harass them into paying their debts, which is the unfortunate practice that the FDCPA seeks to control.

Plaintiffs may well argue upon appeal that the Court is elevating form over substance in its interpretation of Section 1692(a)(6). But Defendants' industry here seems to have stumbled upon a lacuna in the law, one which Congress, recognizing the problem, is contemporaneously working to close. Defendants are not debt collectors as they do not collect debts owed to others; rather, they assume such debts as part of their method, whatever its merits, of credit counseling.

If Defendants subsequently engaged in abusive practices against clients who retained then but then defaulted upon their obligations to Defendants, then, despite their status as credit counselors, they might run afoul the FDCPA. Such facts are, however, dehors the record.

Defendants' Rule 12(b)(6) motion is **GRANTED** as to Plaintiffs' FDCPA

claims. These claims are dismissed **WITH PREJUDICE.**[2]

### B. *Credit Repair Organization Act*

The Credit Repair Organization Act, 15 U.S.C. §§ 1679 *et seq.*, defines credit repair organizations as those engaged in interstate commerce which promise, in return for consideration, to "improv[e] any consumer's credit record." 15 U.S.C. § 1679a(3)(A). The CROA intends to prohibit such organizations from misleading clients into believing that adverse, yet accurate, information might be cleansed from their credit reports, sooner than it might otherwise be, through the intercession of a credit repair organization. *See* H.R.Rep. No. 103–486 (1994), *cited in* Defendants' Memorandum at 5.

In contrast to the parties' dispute over the applicability of the FDCPA, the parties agree that a credit counseling organization *qua* a credit counseling organization may not be sued under the CROA. *See* Defendants' Memorandum at 20–21; Plaintiffs' Memorandum at 8–12. Legitimate credit counseling, which endeavors to gradually improve clients' credit by encouraging creditworthy behavior going forward, is distinct from illegitimate forms of credit repair in which clients are given false hopes of absolution for confessed past credit sins. Yet there is a fine line, in advertising and soliciting for credit counseling services to an unsophisticated audience of lower-income debtors, between promising future rewards for creditworthiness, and implying that existing bad credit records may be prematurely expunged.

Therein lies a factual dispute between the parties. Plaintiffs argue that some sections of the CROA apply to persons, not simply organizations, that in any event persons or organizations who represent that they perform credit repair services may be liable under the CROA, and that certain Defendants have made such representations—specifically that they will "reestablish" a client's credit. Plaintiff's Memorandum at 8–11.

Defendants admit that this language appeared on the web sites of two individual defendants, Cambridge/Brighton and Brighton Credit Management Corporation, but aver that "[v]iewed accurately and in context, the statements upon which Plaintiffs base their CROA claims establish that Defendants do not offer to repair credit histories or records; instead, Defendants accurately state that consumers who improve their payment histories are viewed more favorably by creditors and lenders." Defendants' Memorandum at 21–22. Further, written agreements entered into by the clients of Cambridge/Brighton and Robert Henle, P.C., state that a client's "credit rating is outside the scope" of the services provided. Defendants' Reply Memorandum at 2.

---

**2.** Defendants also argue that at least one of the individual defendants, Cambridge/ Brighton Budget Planning Corporation ["Cambridge Brighton"], is exempt from the reach of Section 1692(a)(6), as it is a designated a nonprofit organization under 26 U.S.C. § 501(c)(3). Plaintiffs respond by challenging the status of Cambridge/Brighton in particular as a *bona fide* tax-exempt organization, and also emphasized at oral argument the great wealth being accumulated by Defendants Messrs. Henle and Puccio through their credit counseling services.

The Court accepts the Internal Revenue Service's designation of Cambridge/ Brighton as a valid Section 501(c)(3) organization. *See* page 12, *infra.* While Plaintiffs' FDCPA claims against Cambridge/Brighton are dismissed for the same reason they are dismissed against the other Defendants—because Cambridge/Brighton does not collect debts within the meaning of the FDCPA—its status as a nonprofit organization would be additional grounds for dismissal as well.

■ A handful of other federal courts have considered the question of what defendants might come within the jurisdictional definition of Section 1679a(3)(a). Their decisions, none of which are binding within this jurisdiction, are again instructive, but not decisive in finding whether a credit counseling agency may be held liable under the CROA.[3] The question is, then, one of first impression within this jurisdiction. The Court finds that, drawing reasonable inferences in Plaintiffs' favor on this motion to dismiss, if it may be proven that certain of the Defendants represented that they would re-establish their clients' spotty credit reports, and if abuses forbidden by the CROA then took place, Plaintiffs may be able to recover under this statute. Blanket dismissal is therefore not appropriate at this stage of the litigation.

One issue regarding the CROA claims remains. Similar to the FDCPA, the CROA specifically does not apply to Section 501(c)(3) organizations. *See* 15 U.S.C. § 1679a(3)(B)(i); *see also* n. 2 *supra.* Defendants' papers state that the following individual Defendants are 501(c)(3) organizations: Cambridge Brighton, and also Cambridge Credit Counseling Corporation. *See* Defendants' Memorandum at 13. It is not clear from Defendants' submissions whether the remaining five corporations are similarly tax-exempt (the three named individuals and Mr. Henle's eponymous professional corporation, of course, are not). But the Court will accept these two Defendants' statuses as 501(c)(3) organizations exempt from both taxes and the CROA, at face value, and dismiss the CROA claims against them. *See similarly Zimmerman,* at 99–101 (dismissing CROA claims against Cambridge Credit Counseling as a tax-exempt organization).

Accordingly, Defendants' Rule 12(b)(6) motion is **GRANTED** as to Plaintiffs' CROA claims against Cambridge Brighton and Cambridge Credit Counseling, and these claims are dismissed **WITH PREJUDICE.** Defendants' motion is **DENIED** as to Plaintiffs' CROA claims against the remaining eight Defendants. Further discovery may continue regarding whether these Defendants in fact offer and perform for consideration credit repair as well as credit counseling services. The caveat is added that legitimate credit counseling services, as such, may not be equated with

---

3.  *See Iosello v. Lexington Law Firm,* 2003 WL 21920237, *5–6, 2003 U.S. Dist. LEXIS 14591 at *17–19 (N.D.Ill. Aug. 7, 2003) (applying the CROA to a law firm); *Wojcik v. Courtesy Auto Sales, Inc.,* 2002 WL 31663298 at *7–9, 2002 U.S. Dist. LEXIS 22731 at *21–26 (D.Neb. Nov. 25, 2002) (finding that the CROA may apply to a car dealership, but not doing so in that case); *Parker v. 1–800 Bar None,* 2002 WL 215530 at *3, 2002 U.S. Dist. LEXIS 2139 at *8–14 (N.D.Ill. Feb. 12, 2002) (applying the CROA to a financial services company that "regularly advertise[d] in local news media that it ... can 'restore your credit' "); *Bigalke v. Creditrust Corp.,* 162 F.Supp.2d 996, 997–98 (N.D.Ill.2001) (applying the CROA to a defendant that "regularly used the mails to provide or offer to provide consumers with a service, in return for money, which purports to improve the consumer's credit record"); *White v. Finanical Credit Corp.,* 2001 WL 1665386 at *6, 2001 U.S. Dist. LEXIS 21486 at *14–18 (N.D.Ill. Dec. 27, 2001) (finding that the CROA did not apply to a debt collector); *Vance v. National Benefit Ass'n, et al.,* 1999 WL 731764 at *3–4, 1999 U.S. Dist. LEXIS 13846 at *9–13 (N.D.Ill. Aug. 26, 1999) (applying the CROA to a bank); *Nielsen v. United Creditors Alliance Corp.,* 1999 WL 674740 at *2–3, 1999 U.S. Dist. LEXIS 13267 at *7–9 (N.D.Ill. Aug. 23, 1999) (applying the CROA to a debt collector); *Sannes v. Jeff Wyler Chevrolet, Inc.,* 1999 WL 33313134 at *1–3, 1999 U.S. Dist. LEXIS 21748 at *3–12 (S.D.Ohio Mar. 31, 1999) (finding that the CROA did not apply to car dealerships); *In re National Credit Mg't Group,* 21 F.Supp.2d 424, 457–58 (D.N.J.1998) (applying the CROA to a defendant that "represent[ed] that, for a fee, they will provide a service that will assist consumers in improving their credit ratings").

the illegitimate credit repair services prohibited by the CROA. If no evidence is presented suggesting that illegal credit repair services have been offered by Defendants, Plaintiffs' remaining claims under the CROA might be amendable to resolution in Defendants' favor by a Rule 56(c) motion for summary judgment.

## C. Racketeering Influenced and Corrupt Organization Act

Finally, Defendants argue that Plaintiffs' claims made under the Racketeering Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961 et seq., are defective, as they do not allege predicate acts under the RICO statute—in this case, mail and wire fraud—with sufficiently particular pleadings, as called for in averments of fraud by Federal Rule of Civil Procedure 9(b). See Defendants' Memorandum at 22–29. Plaintiffs in response rely upon In re: Sumitomo Copper Litig., 104 F.Supp.2d 314, 320 (S.D.N.Y.2000), for the proposition that where "a plaintiff asserts a detailed conspiracy by the defendants, it is reasonable to infer that mail and/or telephone communications were used in furtherance of the defendants' scheme." Plaintiffs' Memorandum at 27.

A review of the communications found sufficiently particular to establish the mail and wire fraud predicates and to satisfy the heightened pleading standards of Rule 9(b) in Sumitomo demonstrates that these communications included content-, date-, sender- and recipient-specific facsimile messages and wire transfers. See id. at 320 (e.g., "Hamanaka sent a fax to Threlkeld at his office in Vermont, asking him to verify fictitious trades which supposedly had occurred through DLT and CLR on September 17 and September 28, 1990, involving 127,505 MT of copper and more than $ 560

million"). The Complaint in the instant case is not nearly as particular or specific.

█ While it is reasonable to infer that the mails or wires might be used to further the kind of conspiracy alleged by Plaintiffs here, as observed in Sumitomo, Plaintiffs must begin by alleging that at least some individually-identified communications were substantively fraudulent in nature and were also transmitted through mail or wire communication, in violation of 18 U.S.C. §§ 1341 and/or 1343.[4] Plaintiffs have not yet done so.

At oral argument, however, Plaintiffs represented to the Court that they might yet be able to identify such fraudulent communications. Accordingly, Defendants' motion to dismiss Plaintiffs' RICO claims is **GRANTED, WITHOUT PREJUDICE** and with **LEAVE TO RE-FILE** a First Amended Complaint.

## Conclusion

The Court is not unsympathetic to the alleged exploitation of and predation upon the vulnerable poor set forth in Plaintiffs' Complaint and opposition papers. In a constitutional system of separated powers, however, it is up to the elected and accountable political branches, and not the unelected and unaccountable Judicial Branch, to fashion wise regulatory and statutory schemes to provide debtors with recourse against claimed wrongs perpetrated by the newly emerging credit counseling industry. Principles of judicial restraint prevent the Court from expanding, sua sponte, the ambit of the FDCPA to encompass abuses in credit counseling as well as debt collection, and so too is the Court constrained from ignoring the provisions of the CROA that exempt Section 501(c)(3) organizations from that statute's

---

**4.** Sections 1341 and 1343 forbid, for the purpose of obtaining money by means of fraudulent pretenses, causing any thing to be delivered by the Postal Service or to be transmitted by wire, radio or television communication in interstate commerce.

reach. No such broad authority is suggested by either the plain language of the statutes or, assuming *arguendo* that such language was ambiguous, even the legislative history or intent behind these laws.

For the foregoing reasons, Defendants' motion to dismiss is **DENIED** pursuant to Rule 12(b)(1). Defendants' motion to dismiss is **GRANTED** as to Plaintiffs' FDCPA claims, and these claims are dismissed **WITH PREJUDICE**. Defendants' Rule 12(b)(6) motion is **GRANTED** as to Plaintiffs' CROA claims against Cambridge Brighton and Cambridge Credit Counseling, and these claims are also dismissed **WITH PREJUDICE**, but it is **DENIED** as to Plaintiffs' CROA claims against the remaining eight Defendants. Lastly, Defendants' motion is **GRANTED** as to Plaintiffs' RICO claims, but these claims are dismissed **WITHOUT PREJUDICE** and with **LEAVE TO RE–FILE**.

**SO ORDERED.**